UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

SHMUEL JACOBS and UPRISE
MARKETING LLC,

                             Plaintiffs,

                -against-

LEOPOLDO JOAQUIN DEL LA MAZA
and DLM VENTURES, LLC,

                             Defendants.

-----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**
20-CV-3320 (ARR) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

      Plaintiffs Shmuel Jacobs and Uprise Marketing LLC commenced this action against Defendants Leopoldo Joaquin del la Maza and DLM Ventures LLC on July 24, 2020. (*See* Complaint ("Compl."), ECF No. 1.) After Defendants failed to appear in response to the original complaint, on July 24, 2022, Plaintiffs filed an amended complaint that alleges various claims arising out of a contractual relationship between Plaintiff Jacobs and Defendant del la Maza. (Amend. Compl., ECF No. 24.) Specifically, Plaintiffs allege a breach of a partnership agreement and related claims, including breach of fiduciary duty, tortious interference, and unjust enrichment. (*Id.* ¶¶ 63–73, 42–62.) Plaintiffs also request declaratory relief as to the ownership of a website, imposition of a constructive trust on Defendant DLM Ventures, and an accounting of Defendant DLM Ventures. (*Id.* ¶¶ 31–41, 74–78.) For the reasons set forth below, this Court recommends that Plaintiff's motion be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  The Partnership Agreement

As alleged in the amended complaint, on August 23, 2019, Plaintiff Jacobs entered into a partnership agreement with Defendant del la Maza (also referred to herein as "Individual Defendant") concerning a website with the domain name www.theslimmingstrap.com (the "Website"), and its product. (*Id.* ¶¶ 10–11; *see also* Partnership Agreement, ECF No. 24-1.) Under the partnership agreement, Plaintiff avers that 50% of the website was to be owned by Plaintiff Jacobs through Uprise Marketing LLC and 50% of the website was to be owned by Defendant del la Maza. (*Id.* ¶ 12.)[1] As alleged in the amended complaint, Plaintiff Jacobs claims that he "invested significant time, effort, and knowledge into the success of the partnership" including but not limited to efforts related to "creating online advertisements, hiring outside assistance, and promoting the website." (*Id.* ¶ 15.) The partnership agreement provides that the partnership was to begin on August 23, 2019, "and shall continue to exist until terminated in agreement by both parties." (Partnership Agreement, ECF No. 24-1, at ECF p. 2.) As to termination, the agreement further provided that it could be dissolved

---

[1] Although Plaintiff alleges in the amended complaint that he was to own 50% of the Website through Uprise Marketing, the partnership agreement's plain terms read differently. Specifically, the partnership agreement states that, with the partnership agreement, the "partners hereby form a partnership under the name of Uprise Marketing LLC," and that the "net profits and net losses of the partnership shall be divided" 50-50 between the partners. (Partnership Agreement, ECF No. 24-1, at ECF p. 2.) In addition, the agreement states that "[a]ll real property, including all improvements placed or located thereon, and all personal property acquired by the Partnership shall be owned by the Partnership and the principle [sic] partner." (*Id.* at ECF p. 3.) However, the agreement does not explicitly state who owns the Website, but provides that the purpose of the partnership is to: "Create a clear understanding of each person's role within the ecommerce store and to ensure that the money earnt [sic] is fairly distributed and there is no chance of foul play." (*Id.* at ECF p. 2; *see also* Inquest Tr., ECF No. 43, at 25:23–26:2 (confirming that the partnership agreement is silent on Website ownership).) The partnership agreement does not specify who is the principal partner.

at any time by agreement of the partners. (Amend. Compl., ECF No. 24, ¶ 14; *see also* Partnership Agreement, ECF No. 24-1, at ECF p. 3.)

Plaintiffs claim that on October 17, 2019, approximately a month and a half after the partnership agreement was executed, Defendant del la Maza "attempted to unilaterally dissolve the Partnership via Skype," and that he "repeatedly attempted to unilaterally dissolve the partnership." (Amend. Compl., ECF No. 24, ¶¶ 18–19.) Plaintiffs further allege that, due to Defendant del la Maza's conduct, he "prevented Jacobs from performing in furtherance of the partnership." (*Id.* ¶ 21.) In addition, Plaintiffs aver that Defendant del la Maza created Corporate Defendant DLM Ventures, LLC, on or about October 29, 2019, "as a means to unlawfully transfer the Website for his sole benefit, to the exclusion of Plaintiffs." (*Id.* ¶¶ 23–24.) From October 17, 2019, through the present, Plaintiffs allege that Individual Defendant has "refused to split the profits of the website to the Plaintiffs," in violation of the partnership agreement, and that Defendant del la Maza has "diverted all assets and proceeds from the website to DLM Ventures LLC." (*Id.* ¶¶ 27–28.)

Plaintiffs also allege that they have been damaged by Defendants' unlawful conduct, and that Defendant del la Maza's internet posts indicate that the annual revenue from the Website, as of December 29, 2020, was $1,548,000. (*Id.* ¶ 29.) Plaintiffs state that, "[b]ased on the Website's operations before Defendants unlawfully transferred ownership of the Website to themselves on or about October 17, 2019, the Website made approximately 30% profit." (*Id.*) Accordingly, Plaintiffs estimate in the amended complaint that, based on $1,548,000 in 2020 revenue alone, there was at least $464,000 in profit that should have been split between Plaintiffs and Defendant del la Maza. (*Id.*)

## II. Procedural History

As noted above, Plaintiffs first filed suit on July 24, 2020, alleging similar causes of action to those pleaded in the amended complaint. (*See* Compl., ECF No. 1.) On September 11, 2020, an attorney executed a waiver of the service of summons on behalf of each Defendant, suggesting that Defendants originally intended to appear in this case. (*See* Waivers of Service, ECF Nos. 6 (DLM Ventures) & 7 (del la Maza).) Notwithstanding the service waivers, Defendants failed to answer the complaint. Accordingly, Plaintiffs first initiated default motion practice in January 2022. (*See* Request for Certificate of Default, ECF No. 15; Clerk's Entry of Default, ECF No. 16; Mot. for Default J., ECF No. 17; *see also* Mot. for Default J., ECF No. 20.) At a June 13, 2022 hearing, at which Defendants did not appear, the Court questioned whether "there is subject matter jurisdiction based on Plaintiffs' pleadings, which [did] not specifically allege the owners and citizenship of the LLC entities in this case," and also asked Plaintiffs about the amount in controversy, and how they planned to establish damages. (June 13, 2022 ECF Minute Entry and Order.) On July 11, 2022, the Court held another hearing; Defendants again did not appear. (July 11, 2022 ECF Minute Entry and Order.) At the July 11 hearing, Plaintiffs moved to withdraw the then-pending default motion in anticipation of filing an amended complaint "to clarify and supplement Plaintiffs' allegations concerning subject matter jurisdiction and damages." (*Id.*) The Court granted Plaintiffs' request to withdraw the original default motion, and granted Plaintiffs leave to file an amended complaint. (*Id.*)

Plaintiffs filed the amended complaint on July 20, 2022, and filed new proposed summons for Defendants two days later. (Amend. Compl., ECF No. 24; Proposed Summons, ECF Nos. 28 & 29.) Plaintiffs thereafter filed proof of service in August 2022. (*See* Aff. of Service, ECF No. 32 (attesting to personal service on Leopoldo Joaquin del la

Maza in San Diego, CA); Aff. of Service, ECF No. 34 (confirming service on DLM Ventures via service on a registered agent in Delaware).) Plaintiffs then initiated the current motion for default judgment, which the Honorable Allyne R. Ross referred to the undersigned magistrate judge. (*See* Request for Certificate of Default, ECF No. 35; Mot. for Default J., ECF No. 39; Oct. 21, 2022 ECF Referral Order.) On May 23, 2023, the Court issued an order directing Plaintiffs to provide proof of compliance with E.D.N.Y. Local Civil Rules 7.1 and 55.2, and a damages calculation and declaration in support of their request for monetary relief. (May 23, 2023 ECF Order.) Plaintiffs then filed additional proof of service of the default motion paperwork to Defendants, and a supplemental damages calculation, together with supporting documentation. (Pls.' Ltr., ECF No. 41; Declaration of Plaintiff Shmuel Jacobs ("Jacobs Decl."), ECF No. 42.) The Court then scheduled an inquest. (*See* July 17, 2023 ECF Minute Entry and Order.)

On August 4, 2023, the Court held an inquest. (*See* Inquest Tr., ECF No. 43.) Plaintiff testified regarding how he met Defendant del la Maza, the creation of the partnership agreement, and how he estimated the damages based on publicly-available information. Plaintiff also introduced six exhibits, including a copy of the partnership agreement (Ex. A); a registration statement related to the formation of Uprise Marketing LLC (Ex. B); a text message exchange between Plaintiff and Defendant del la Maza (Ex. C, previously filed as ECF No. 42-2); a screen shot from Plaintiff's phone taken in 2019, after the execution of the partnership agreement, which shows notifications of sales of the SlimmingStrap that had been transmitted to Plaintiff's phone from Shopify, an online e-commerce platform (Ex. D); a spreadsheet Plaintiff had authored in 2019 documenting his work advertising on behalf of the partnership and tracking sales, advertising expenditures, and profits (Ex. E); and a screenshot of a Facebook post dated December 29, 2020, in which Defendant del la Maza included sales information,

claiming that he had earned $1,548,839.90 in sales for 65,180 orders through his business Dlm Marketing (Ex. F). (*See* Inquest Tr., ECF No. 43.)

At the hearing, Plaintiff Jacobs testified that the net profits from the Website were approximately 30%, when taking into consideration advertising and inventory expenses. (*See* Inquest Tr., ECF No. 43, at 17:7–11, 18:23–19:8; *see also* Jacobs Decl., ECF No. 42, ¶¶ 7, 10–11.) Jacobs further testified that, based on his calculations, he believed that Defendant del la Maza's representation that he had earned $1,548,839.90 in sales, based on 65,180 orders, was evidence of what Defendants had earned from selling the SlimmingStrap, given that the average order price was approximately $23.00. (*See* Inquest Tr., ECF No. 43, at 21:6–25.) The Court notes that $1,548,839.90 divided by 65,180 equals $23.76. Based on an estimated 30% net profit, which was the net profit at the time Plaintiff Jacobs had access to the Website's business records, Plaintiff Jacobs estimates that he is entitled to over $232,000 for 2020 alone. (Amend. Compl., ECF No. 24, ¶ 29.) Plaintiff Jacobs further alleges that he has "been damaged since October 2019 continuing to the present," resulting in damages in excess of $232,000. (*Id.*)

## DISCUSSION

## I.  Legal Standards for Default Judgment

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may enter a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local Civ. R. 55.2(b). A "plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y.

2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[2] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).

Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal

---

[2] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having reviewed the filings in this case, the Court finds that Plaintiffs' motion papers comport with these rules. Specifically, Plaintiffs (1) requested the most recent certificate of default in accordance with Local Rule 55.1(a) (*see* Request for Certificate of Default, ECF No. 35); (2) demonstrated that the pleadings were properly served and that Defendants have failed to defend the action, in accordance with Local Rule 55.1(b) (*see* Decl. in Supp. of Mot. for Default J., ECF No. 39-1; Affs. of Service, ECF Nos. 32 & 34; *see also* Pls.' Ltr., ECF No. 41); and (3) certified the mailing of the motion papers to Defendant del la Maza's last known residence, and the last known business addresses of Defendant DLM Ventures, in accordance with Local Rule 55.2(c). (*See* Aff. of Service, ECF No. 41-2.) Although the mailing was not simultaneous with the filing of the motion for default judgment, as required by E.D.N.Y. Local Civil Rule 55.2, the Court finds this subsequent mailing sufficient in light of the procedural history of this case, including the clear indication that Plaintiffs had notice of the proceedings at the outset, given their determination to waive service through counsel, and multiple efforts to provide them with notice, as detailed herein. *See Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *6 (E.D.N.Y. Aug. 11, 2020) (explaining that a district court's discretion "to grant or deny a motion for default judgment . . . includes the 'broad discretion to determine whether to overlook a party's failure to comply [strictly] with local court rules'" (quoting *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001))), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020).

Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). The "plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))). However, in the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

In this case, Plaintiffs seek monetary damages, and other relief, including the imposition of a constructive trust, an accounting, and a declaratory judgment, as set forth above.

## II.  Entry of Default

In determining whether entry of a default judgment is warranted, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y.

Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

### A. Willfulness

In the default context, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81. Defendants' failure to respond or otherwise appear in this action, after they originally waived formal service through counsel, supports a finding of willfulness.

As detailed above, the record shows that Plaintiffs provided notice of this case to Defendants at the outset. In addition, following the filing of the amended complaint, Plaintiffs served it on Defendants and provided proper notice regarding the current motion for default judgment. Specifically, Plaintiffs filed proof of service of the amended complaint in August 2022. (*See* Affs. of Service, ECF Nos. 32, 34; *see also* Pls.' Ltr., ECF No. 41.) Plaintiffs served DLM Ventures on August 12, 2022, via service on a registered agent in Delaware, as permitted by New York law. (*See* Aff. of Service, ECF No. 34.) *See* Fed. R. Civ. P. 4(e)(1) & (h)(1)(a); N.Y. C.P.L.R. § 311-a(a); N.Y. Bus. Corp. Law § 306(a); *see also Smart Team Glob. LLC v. HumbleTech LLC*, No. 19-CV-4873 (AJN)

(BCM), 2022 WL 847301, at *2, 5 (S.D.N.Y. Feb. 18, 2022) (finding that New York law permits service upon a limited liability company via its registered agent). As to Defendant del la Maza, Plaintiffs served the summons and amended complaint on him personally, on August 5, 2022, pursuant to Federal Rule of Civil Procedure 4(e)(2)(A). (*See* Aff. of Service, ECF No. 32.) *See* Fed. R. Civ. P. 4(e)(2)(A); *see also Singh v. Meadow Hill Mobile Inc.*, No. 20-CV-3853 (CS), 2023 WL 3996867, at *5 (S.D.N.Y. June 14, 2023) (noting that service by delivery of the summons and complaint to an individual personally is authorized by Fed. R. Civ. P. 4(e)(2)(A)). In addition, Plaintiffs filed supplemental proof of service regarding the mailing of the default motion paperwork to Defendants as required by E.D.N.Y. Local Civil Rule 55.2. (*See* May 23, 2023 ECF Order; Aff. of Service, ECF No. 41-2; Pls.' Ltr., ECF No. 41.)

Defendants have not answered the amended complaint within 21 days of service. (*See* Aff. in Supp. of Mot. for Default J., ECF No. 39-1.) Defendants likewise failed to respond after Plaintiffs moved for default judgment twice, and they also failed to attend the default hearing held by the Court and the inquest, notwithstanding multiple scheduling orders being sent to Defendants directly from the Clerk of Court. (*See* Apr. 25, 2022 ECF Scheduling Order (scheduling original default hearing for June 13, 2022); Notice to Defs., ECF No. 18; *see also* Affs. of Service, ECF Nos. 32 & 34; July 5, 2023 ECF Scheduling Order (scheduling telephonic status conference for July 17, 2023); July 17, 2023 ECF Minute Entry and Order (scheduling inquest hearing for August 4, 2023).) In light of Defendants' failure to respond, despite being provided notice at least five times of these proceedings, the Court weighs this factor in favor of default.

### B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d

Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendants have entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

### C. Prejudice

"The final factor the Court must consider is whether the non-defaulting part[y] would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)). In light of Defendants' failure to respond to both Plaintiffs' and the Court's notices, "there is no indication that requiring Plaintiffs to take further steps . . . would be effective in eliciting a response from Defendants." *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiffs would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of entering a default judgment. Seeing no other equitable reason for denying Plaintiffs' motion, the Court recommends entering a default judgment as detailed below.

## III. Defendants' Liability

### A. Declaratory Relief

Plaintiffs' first cause of action seeks declaratory relief under New York law. (Amend. Compl., ECF No. 24, ¶¶ 31–34; *see also* Pls.' Mem. of Law in Supp. of Mot. for

Default J. ("Pls.' Mem."), ECF No. 39-8, at 9 (citing *Morgenthau v. Erlbaum*, 59 N.Y.2d 143, 147 (1983).) Specifically, Plaintiffs seek a declaration from this Court (1) that the Partnership Agreement is valid, (2) that Plaintiff Jacobs, through Uprise Marketing LLC, owns 50% of the Website, and (3) that Plaintiffs are entitled to 50% of the assets and proceeds of DLM Ventures derived from the Website. (Amend. Compl., ECF No. 24, ¶¶ 31–34.)

Under New York law, a declaratory judgment is not considered to be "an extraordinary remedy." *Morgenthau*, 59 N.Y.2d at 147. "Critically, declaratory judgment does not entail coercive relief, but only provides a declaration of rights between parties that, it is hoped, will forestall later litigation." *Id.* at 148. In the context of contracts, the New York Court of Appeals has observed that "[a] declaratory judgment action may be an appropriate vehicle for settling justiciable disputes as to contract rights and obligations" when their agreement does not specify "a different, reasonable means for resolving such disputes." *Kalisch-Jarcho, Inc. v. City of New York*, 72 N.Y.2d 727, 731–32 (1988). "The decision to entertain or dismiss a declaratory judgment action rests within the court's discretion." *Bravia Cap. Partners, Inc. v. Fike*, No. 09-CV-6375 (JFK), 2010 WL 3359470, at *3 (S.D.N.Y. Aug. 25, 2010). The contours of the Court's discretion have been described by the New York Court of Appeals as follows:

> In keeping with the remedy's nonextraordinary nature . . . the court has a broader power to grant declaratory judgment than it does with prohibition. It may decline to hear the matter if there are other adequate remedies available, and it must dismiss the action if there is already pending between the parties another action in which all the issues can be determined. The mere existence of other adequate remedies, however, does not require dismissal: "We have never gone so far as to hold that, when there exists a genuine controversy requiring a judicial determination, the Supreme Court is bound, solely for the reason that another remedy is available, to refuse to exercise the power conferred by [the predecessor statutes to CPLR 3001]."

*Morgenthau*, 59 N.Y.2d at 148 (citation omitted) (quoting *Woollard v. Schaffer Stores Co.*, 272 N.Y. 304, 311–12 (1936)).

In this case, as set forth above, Plaintiffs seek declaratory relief concluding that the contract is valid and that Plaintiffs are entitled to 50% of the assets and proceeds of the Website; they also seek a declaration regarding ownership of the Website. (Amend. Compl., ECF No. 24, ¶¶ 31–34.) As set forth, however, *supra* note 1, the partnership agreement is silent as to ownership of the Website, which fact was confirmed at the inquest. (Inquest Tr., ECF No. 43, at 25:23–26:2.) As to Plaintiffs' other two requests for relief, the Court finds that the agreement here plainly establishes that Plaintiff Jacobs is entitled to 50% of the profits from the Website. In the absence of an appearance or contrary evidence in this default posture, the Court respectfully recommends granting a declaration that the partnership agreement is a valid contract, which entitles Plaintiff Jacobs to 50% of the profits from the Website. (Partnership Agreement, ECF No. 24-1, at ECF p. 2 ("The amount of net profits and net losses of the partnership shall be divided (SAM) 50-50 (Leopoldo) between the partners including existing assets.").)[3]

## B. Breach of Contract

"Under New York law, a breach of contract claim requires a plaintiff to allege that '(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages.'" *Shinano Kenshi Corp. v. Honeywell Int'l, Inc.*, No. 22-CV-3704 (LGS), 2023 WL 2431327, at *3 (S.D.N.Y. Mar. 9, 2023) (quoting *34-06 73, LLC v. Seneca Ins.*, 39 N.Y.3d

---

[3] The Court notes that the partnership agreement refers to Plaintiff Jacobs as "Samuel Jacobs" and "Sam" and that it refers to Defendant del la Maza as "Leopoldo." (Partnership Agreement, ECF No. 24-1, at ECF p. 2.)

44, 52 (2022)). As set forth above, Plaintiffs assert that Defendants breached the partnership agreement, which was attached and incorporated into the amended complaint. (Amend. Compl., ECF No. 24, ¶¶ 63–73.) Plaintiffs further allege that "Plaintiff Jacobs did contribute and was ready, willing, and able to continue to contribute to the partnership, but for the Defendants' unlawful conduct described above." (*Id.* ¶ 68.) As a result, Plaintiffs claim damages in the amount of 50% of the proceeds of the Website, which Plaintiffs allege is at least $232,000, plus statutory interest. (*Id.* ¶¶ 29, 73; *see id.* at p. 24.) In the absence of a response from Defendants, the Court finds that Plaintiffs have adequately pleaded a breach of the partnership agreement, and are entitled to damages.

## C. Breach of Fiduciary Duty

Plaintiffs' breach of fiduciary duty claim names Defendant del la Maza only, grounded on the theory that he owed a fiduciary duty to Plaintiff Jacobs as they were "50/50 partners who shared certain responsibilities in operating the Website." (*Id.* ¶ 44.) Plaintiff further alleges that, notwithstanding that partnership, Defendant del la Maza "intentionally usurped business opportunities and took actions" that harmed Plaintiffs financially. (*Id.* ¶ 45.) Accordingly, Plaintiffs seek a money judgment on this claim of not less than $232,000, plus statutory interest. (*Id.* ¶ 47.)

"Under New York law, the elements of a claim for breach of fiduciary duty are: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom.'" *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citations omitted)). "[A] fiduciary relationship exists . . . when one is under a duty to act for or to give advice for the benefit of another upon matters within

14

the scope of the relation." *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 306 (S.D.N.Y. 2014) (modification and quotation marks omitted).

However, "'[w]here a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract' and must be dismissed." *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (quoting *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publ'g Co.*, 580 F. Supp. 2d 285, 294–95 (S.D.N.Y. 2008)). Accordingly, this Court recommends dismissing Plaintiff's breach of fiduciary duty claim. *See id.* at 106 (dismissing breach of fiduciary claim where it was "identical in substance to the breach of contract claim and is therefore duplicative" in a case where "[b]oth claims [were] premised upon the same facts and seek the same damages for the alleged conduct"); *cf. Hartford Fire Ins. Co. v. Jainulabdeen*, No. 06-CV-2171 (ENV) (KAM), 2007 WL 1028930, at *5 (E.D.N.Y. Mar. 30, 2007) ("[T]he court need not determine whether [the parties'] relationship . . . was such as to rise to the level of a fiduciary duty, because plaintiff's fraud and conversion causes of action sufficiently establish plaintiff's right to [relief].").[4]

### D. Tortious Interference

To adequately plead tortious interference under New York law, a plaintiff must establish "(a) that a valid contract exists; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe*,

---

[4] In any event, the Court notes that Plaintiffs have likely failed to establish the existence of a fiduciary relationship between Plaintiff Jacobs and Defendant del la Maza. *See, e.g.*, *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 101–05 (S.D.N.Y. 2013) (setting forth the relevant standards for a breach of fiduciary duty claim and explaining, *inter alia*, that courts normally do not recognize fiduciary duties "where parties deal at arm's length in conventional business transactions" (quotation marks omitted)).

79 F.3d 1285, 1294 (2d Cir. 1996) (quotation marks omitted). The amended complaint states that this cause of action is brought against both Defendants, yet the factual allegations assert that DLM Ventures interfered with the contract between Plaintiffs and Defendant del la Maza, and that Defendants conspired to divert money to DLM Ventures. (*See* Amend. Compl., ECF No. 24, at ECF pp. 8–9.) Specifically, Plaintiffs claim that "Defendants intended to harm Plaintiffs' business when they conspired to divert - and did so divert - the assets and proceeds from the [Website] to DLM Ventures LLC." (Amend. Comp., ECF No. 24, ¶ 54.) In their brief in support of the default motion, Plaintiffs further argue that "DLM Ventures LLC, conspiring with [Individual Defendant], successfully diverted assets and proceeds from the partnership" between Plaintiff Jacobs and Defendant del la Maza. (Pls.' Mem., ECF No. 39-8, at pp. 10–11; *see also* Amend. Compl., ECF No. 24, at ¶¶ 48–56.) As Defendant del la Maza is a party to the contract, Plaintiffs' tortious interference claim fails as to this Defendant as a matter of law. (*See* Partnership Agreement, ECF No. 24-1.) *See Koret, Inc. v. Christian Dior, S.A.*, 554 N.Y.S.2d 867, 869 (N.Y. App. Div. 1st Dep't 1990) ("It is well established that only a stranger to a contract . . . can be liable for tortious interference with a contract.").

Additionally, the Court finds that Plaintiffs' tortious interference claim is duplicative of the breach of contract claim. It is well settled that, "[a]s a general rule, tortious interference claims that are duplicative of contract claims are precluded." *Choquette v. Motor Info. Sys., Inc.*, No. 15-CV-9338 (VEC), 2017 WL 3309730, at *6 (S.D.N.Y. Aug. 2, 2017). Here, Plaintiffs do not claim that Defendants breached any duty that "springs from circumstances extraneous to and not constituting elements of, the parties' contract." *Id.* (alterations and quotation marks omitted). Accordingly, absent a showing that the alleged unlawful conduct derived from an independent duty outside the contract, such that the breach of the contract should be considered a tort, the

"'general rule [is that] tortious interference claims that are duplicative of contract claims are precluded.'" *Horowitz v. Nat'l Gas & Elec., LLC*, No. 17-CV-7742 (JPO), 2018 WL 4572244, at *7 (S.D.N.Y. Sept. 24, 2018) (quoting *Choquette*, 2017 WL 3309730, at *6).

There are no such allegations here. Accordingly, the Court recommends dismissing Plaintiffs' tortious interference claim as to both Defendants.

### E. Unjust Enrichment

Plaintiffs also allege a cause of action for unjust enrichment. (Amend. Compl., ECF No. 24, ¶¶ 57–62.) However, "[a]n unjust enrichment claim is not available [under New York law] where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012); *see also Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052 (RPK) (SJB), 2022 WL 432320, at *7 (E.D.N.Y. Jan. 19, 2022) ("[U]njust enrichment is not always viable when one party unjustly holds property or money of another. Properly understood, the claim protects a plaintiff only in those circumstances where she has no other recourse in tort or contract."), *report and recommendation adopted in relevant part*, 2022 WL 426163 (E.D.N.Y. Feb. 11, 2022).

In this case, Plaintiffs allege that Defendants were unjustly enriched by Defendant del la Maza's refusal to follow through with the terms of the partnership agreement, but Plaintiffs' claims are "based on the same transactions" as their breach of contract claim and thus this claim is duplicative. *Armengol*, 2022 WL 432320, at *7. (*Compare* Amend. Compl., ECF No. 24, ¶¶ 63–73 (breach of contract claim), *with id.* ¶¶ 57–62 (unjust enrichment claim).) Therefore, Plaintiffs are not entitled to a separate judgment on their claim for unjust enrichment. *Armengol*, 2022 WL 432320, at *7 (citing, *inter alia*, *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018); *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018)); *see also Hudson*

*Neurosurgery, PLLC v. UMR, Inc.*, No. 20-CV-9642 (KMK), 2022 WL 902107, at *6 (S.D.N.Y. Mar. 28, 2022).

### F. Constructive Trust

Plaintiffs additionally request that the Court impose the equitable remedy of a constructive trust on Defendant DLM Ventures. (Amend. Compl., ECF No. 24, ¶¶ 35–41.) As part of that claim, the amended complaint alleges that the constructive trust is warranted because Defendants failed to distribute profits as required by the partnership agreement, and seeks transfer of assets, including 50% of the Website to Plaintiffs. (*Id.* ¶¶ 38, 35–41.) Insofar as this claim arises out of the same factual allegations as the breach of contract claim, it is duplicative to the extent that the claims seek monetary damages. (*Compare id.* ¶¶ 35–41 (constructive trust claim), *with id.* ¶¶ 63–73 (breach of contract claim)). Notably, "New York courts have clarified that '[a]s an equitable remedy, a constructive trust should not be imposed unless it is demonstrated that a legal remedy is inadequate.'" *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004) (alteration in original) (quoting *Bertoni v. Catucci*, 498 N.Y.S.2d 902, 905 (N.Y. App. Div. 3d Dep't 1986)); *see also Shaw v. Empire Stock Transfer Inc.*, 381 F. Supp. 3d 286, 292 (S.D.N.Y. 2019); *Akerson Advert. & Mktg., Inc. v. St. John & Partners Advert. & Pub. Rels., Inc.*, 89 F. Supp. 3d 341, 356 (N.D.N.Y. 2015). Regarding Plaintiffs' request that the Court order the transfer of 50% of the Website to Plaintiffs, as the Court noted above, the partnership agreement did not provide Plaintiff Jacobs with any ownership interest in the Website. There is thus no basis to provide Plaintiffs with this equitable remedy. In addition, because the Court recommends finding that Plaintiff Jacobs is entitled to relief on his breach of contract claim, "Plaintiff need not seek recourse in equity." *Ramgoolie v. Ramgoolie*, No. 16-CV-3345 (VEC) (SN), 2021 WL 8013769, at *8 (S.D.N.Y. Nov. 24, 2021),

*report and recommendation adopted*, 2022 WL 669868 (S.D.N.Y. Mar. 4, 2022). Accordingly, the Court recommends not imposing a constructive trust.

### G. Corporate Accounting

Under New York law, to state a claim for a corporate accounting, a plaintiff must allege: "'(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal.'" *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009) (quoting *Pressman v. Est. of Steinvorth*, 860 F. Supp. 171, 179 (S.D.N.Y. 1994)); *see also Soley v. Wasserman*, 639 F. App'x 670, 674 (2d Cir. 2016) ("New York law clearly requires that a principal demonstrate the unavailability of an 'adequate remedy at law' in order to prevail on a claim for an equitable accounting, *in addition* to establishing the existence of a fiduciary relationship." (emphasis in original)). Here, Plaintiffs seek a corporate accounting of DLM Ventures, LLC, alleging they have no access to books and records from which to ascertain the scope of the diverted assets and Website proceeds. (*See* Amend. Compl., ECF No. 24, ¶¶ 74–78.)

The amended complaint, however, is devoid of allegations that Plaintiffs had "relations of a mutual and confidential nature" with Defendant DLM Ventures. *IMG Fragrance Brands, LLC*, 679 F. Supp. 2d at 411. (*See* Amend. Compl., ECF No. 24.) Moreover, DLM Ventures was not a party to the partnership agreement between Plaintiff Jacobs and Defendant del la Maza. (*See* Partnership Agreement, ECF No. 24-1.) *See generally Zorbas v. U.S. Tr. Co., N.A.*, 48 F. Supp. 3d 464, 486–87 (E.D.N.Y. 2014) (discussing, in the financial services context, that fiduciary relationships do not necessarily arise from contractual relationships). But even if DLM Ventures was a party to the contact (which it was not), when "express contracts govern" the relationships

19

between parties, a "[p]laintiff's subjective beliefs and conclusory allegations that a 'special' relationship existed are insufficient to establish a fiduciary duty." *Zorbas*, 48 F. Supp. 3d at 486–87; *see also Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC*, 159 F. Supp. 3d 324, 339 (E.D.N.Y. 2016) ("New York courts have repeatedly dismissed accounting claims where the parties' relationship arises from a contract."). Moreover, Plaintiffs do not allege that any money or property was entrusted to DLM Ventures. (*See* Amend. Compl., ECF No. 24.)

With respect to the third element of an accounting claim — whether there is no adequate legal remedy — "an equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011). The accounting claim here covers the same subject matter as Plaintiffs' breach of contract claim, as the alleged purpose of the accounting is to gain access to "all assets and proceeds" that were allegedly diverted from the Website to DLM Ventures. (*See* Amend. Compl., ECF No. 24, ¶¶ 74–78.)

For the reasons set forth above, the amended complaint does not adequately allege Plaintiffs' entitlement to relief for a corporate accounting. Accordingly, the Court respectfully recommends dismissing this claim.

## IV. Damages

Having found that Defendants' default constitutes an admission of liability with respect to Plaintiffs' claims of breach of contract and request for a declaratory judgment, and that entry of default judgment is appropriate, the Court now must determine the appropriate damages. *See Cement & Concrete Workers Dist. Council Welfare Fund v. Metro. Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (explaining that although the allegations in a complaint related to liability are deemed admitted upon entry of a

default judgment, a default "is not considered an admission of damages" (quotation marks omitted)). "The court must determine the amount of damages, actual or statutory, that may be assessed," and "ensure that there is a reasonable basis for the damages specified in a default judgment." *Santillan v. Henao*, 822 F. Supp. 2d 284, 290 (E.D.N.Y. 2011). As discussed above, "[t]he plaintiff bears the burden of presenting proof of damages, which may take the form of documentary evidence or detailed affidavits." *Joe Hand Promotions, Inc.,* 2020 WL 5519200, at *3. Courts have discretion under Federal Rule of Civil Procedure 55(b)(2) to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A.*, 951 F.2d at 508. In addition, the moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp.*, 653 F.2d at 65.

Here, as to the breach of contract claim, Plaintiffs seek damages in the amount of "no less than $232,000, plus statutory interest and reasonable attorneys' fees." (*See* Amend. Compl., ECF No. 24, ¶¶ 73.)

## A.  Breach of Contract Damages

"The Court begins its analysis with the 'fundamental principle that damages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract.'" *Aquavit Pharmacueticals, Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC) (RWL), 2023 WL 2396511, at *7 (S.D.N.Y. Feb. 17, 2023) (quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002)), *report and recommendation adopted sub nom. Aquavit Pharms., Inc. v. U-Bio Med., Inc.*, 2023 WL 2584198 (S.D.N.Y. Mar. 21, 2023). Plaintiffs seek to recover the profits they would have earned on the sale of the Website's products, which they did not receive as a consequence of Defendant del la Maza's breach of the partnership agreement. (*See generally* Amend. Compl., ECF No. 24.) In response to a Court order directing Plaintiffs

to submit a damages calculation and declaration in support, Plaintiffs filed the declaration of Plaintiff Shmuel Jacobs; he also testified at the Inquest. (*See* May 23, 2023 ECF Order; Jacobs Decl., ECF No. 42, ¶ 2; Inquest Tr., ECF No. 43.) Jacobs estimates that Plaintiffs are entitled to $232,325.99 for 2020 alone, and that using a 30% profit margin on similar sales "for the years 2021 and 2022 . . . the total amount of monies [owed] to Plaintiffs is $696,977.96." (Jacobs Decl., ECF No. 42, ¶¶ 11–12.)

In New York, "[g]eneral damages are the natural and probable consequence of the breach of a contract." *Biotronik A.G. v. Conor Medsystems Ir., Ltd.*, 22 N.Y.3d 799, 805 (2014) (quotation marks omitted)). They include "money that the breaching party agreed to pay under the contract." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007). Relevant here, the New York Court of Appeals has recognized that "[l]ost profits from the breach of a distribution contract are . . . general damages where the nature of the agreement supported a conclusion that they flowed directly from the breach." *Biotronik*, 22 N.Y.3d at 806. To recover lost profits under New York law for a contract breach, "a plaintiff must make three showings: 1) the damages were caused by the breach; 2) the damages are provable with reasonable certainty; and 3) the damages were within the contemplation of the parties at the time of contract." *Atlas v. Sedrish*, 133 F. App'x 759, 760 (2d Cir. 2005).

With regard to calculating damages, "[a]lthough lost profits need not be proven with mathematical precision, they must be capable of measurement based upon known reliable factors without undue speculation." *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (quotation marks omitted); *see also Biotronik*, 22 N.Y.3d at 806 (observing that lost profits, "if reasonably certain, may be said to measure the value of the contract to the plaintiff" (quotation marks omitted)). However, under New York law, "evidence of lost profits from a new business venture receives greater scrutiny because there is no

22

track record upon which to base an estimate." *Schonfeld*, 218 F.3d at 172; *see also id.* ("Projections of future profits based upon a multitude of assumptions that require speculation and conjecture and few known factors do not provide the requisite certainty." (quotation marks omitted)).

Here, Plaintiff Jacobs has sufficiently demonstrated that he suffered lost profits due to Defendant del la Maza's breach of the partnership agreement. (*See* Jacobs Decl., ECF No. 42, ¶¶ 4–5; Amend. Compl., ECF No. 24, ¶¶ 18–28; Inquest Tr., ECF No. 43.) As to the extent of the losses, the Court finds that Plaintiffs have provided sufficient proof, but only as to lost profits from October 2019 through 2020. (*See* Jacobs Decl., ECF No. 42, ¶¶ 6–11; Instagram Screenshot, ECF No. 42-2; Facebook Screenshot, ECF No. 42-3.) With regard to Plaintiffs' allegations for 2021 and 2022, the Court concludes that Plaintiffs have not established with reasonable certainty the amount of lost profits when evaluated with the higher degree of scrutiny applicable to new business ventures. *See Schonfeld*, 218 F.3d at 172. (*See* Jacobs Decl., ECF No. 42.) As set forth above, Plaintiff Jacobs testified that, during the time period that he was involved with the Website, it had an approximately 30% profit margin. (Inquest Tr., ECF No. 43, at 18:23–19:8.) From there, based on publicly-available information posted by Defendant del la Maza, Plaintiff Jacobs deduced that over 2020, the Website had earned $1,548,839.90 in sales, based on 65,180 orders. (*See* Inquest Tr., ECF No. 43, at 21:6–25.) Accordingly, Plaintiffs calculate that, based on $1,548,839.90 in 2020 revenue alone, there was $464,651.97 in profit that should have been split between Plaintiff Jacobs and Defendant del la Maza, or $232,325.99 each. (Jacobs Decl., ECF No. 42, ¶ 11.)

While Plaintiff Jacobs provided evidence with his declaration and at the Inquest in support of this damages estimate, there is no actual evidence regarding the Website's profits or sales for any other year. (*See* Jacobs Decl., ECF No. 42; Inquest Tr., ECF

No. 43.) Thus, in the absence of evidence pertaining to the Website's profits and sales for 2021 and 2022, the Court would be forced to assume that the Website continued to enjoy robust sales, and, ultimately speculate as to the amount of lost profits. This is a step too far given New York's heightened scrutiny for new businesses and the need for lost profits to be "reasonably certain." *Biotronik*, 22 N.Y.3d at 806. *See, e.g., Int'l Telecom, Inc. v. Generadora Electrica del Oriente, S.A.*, No. 00-CV-8695 (WHP) (KNF), 2004 WL 784941, at *4 (S.D.N.Y. Apr. 13, 2004) (denying plaintiff lost profit damages attributed to the defendants' breach where the court "would be obligated to make speculative assumptions, including that the parties operated successfully under the [agreement for those years] without competition, regulatory changes, technological developments, or service interruption, and that all projected expenses would have proved correct").

With respect to whether Plaintiffs have established that lost profit damages were "within the contemplation of the parties at the time of contract," *Atias*, 133 F. App'x at 760, the Court turns to the terms of the partnership agreement. (*See* Partnership Agreement, ECF No. 24-1.) While there is no express language relating to lost profit damages in the partnership agreement, the agreement does state that the overall purpose of the contract was to "ensure that the money earnt [sic] is fairly distributed and there is no chance of foul play." (*Id.* at ECF p.2.) The point was reiterated in exchanges between the parties via Instagram direct messages, in which Plaintiff Jacobs expressed his frustration with not receiving his 50% allocation of the profits, as previously contemplated in the agreement. (*See* Instagram Screenshot, ECF No. 42-2.) "If . . . contemplation is not express, a court may look to the nature, purpose[,] and particular circumstances of the contract known by the parties . . . as well as what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was

made." *LG Cap. Funding, LLC v. FLASR, Inc.*, 422 F. Supp. 3d 611, 618 (E.D.N.Y. 2018) (quotation marks omitted); *see also Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1578 (2d Cir. 1994). After reviewing the particular purpose of the partnership agreement here, which was expressly stated, the Court finds that Plaintiffs have sufficiently established that lost profits were fairly within the contemplation of the parties as possible damages. (*See* Partnership Agreement, ECF No. 24-1, at ECF p.2.)

The Court therefore recommends that Plaintiff Jacobs be awarded $232,325.99 in damages.

### B. Costs and Attorneys' Fees

As for Plaintiffs' request to recover costs, attorneys' fees, and expenses, there does not appear to be any legal basis for shifting fees in this case, nor have Plaintiffs submitted any evidence demonstrating the costs, fees, or expenses incurred in connection with this suit. (*See* Mot. for Default J., ECF No. 39; *see also* Amend. Compl., ECF No. 24, at 12; May 23, 2023 ECF Order (granting Plaintiffs until June 26, 2023 to "submit a damages calculation and declaration in support, together with any supporting affidavits from potential witnesses or other documents").) Accordingly, the Court respectfully recommends denying Plaintiffs' request for attorneys' fees. *See Newman v. Mor*, No. 08-CV-658 (RJD) (CLP), 2009 WL 890552, at *8 (E.D.N.Y. Mar. 31, 2009) ("Since it is unclear on what basis plaintiff believes he is entitled to reimbursement from defendants, this Court respectfully recommends that the request for reimbursement of attorney's fees be denied."); *see also Davis v. Davis*, No. 16-CV-6667 (JPO), 2018 WL 4062668, at *4 (S.D.N.Y. Aug. 27, 2018).

However, as to costs, given that Plaintiff Jacobs is a prevailing party and is therefore "entitled to costs other than attorneys' fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure," the Court takes judicial notice of the $400 filing fee

reflected on the docket, and recommends awarding that amount in costs. *Murphy v. Snyder*, No. 10-CV-1513 (JS) (GRB), 2012 WL 4483025, at *5 (E.D.N.Y. Mar. 28, 2012); *see also Harbus v. Lead Clearance Inc.*, No. 20-CV-1915 (KAM), 2022 WL 604062, at *6 (E.D.N.Y. Mar. 1, 2022) ("[F]iling fees are recoverable without supporting documentation if verified by the docket." (alterations in original, quotation marks omitted)); *D'Annunzio v. Ayken, Inc.*, No. 11-CV-3303 (WFK) (WDW), 2015 WL 5308094, at *8 (E.D.N.Y. Sept. 10, 2015) (denying costs other than filing fee absent submission of documentation in support). In the absence of any other documentation regarding costs, the Court respectfully recommends limiting the award of costs to $400.

### C. Prejudgment Interest

In New York, "[a] plaintiff who prevails on a claim for breach of contract is entitled to pre-judgment interest as a matter of right." *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 630 (S.D.N.Y. 2011) (alteration omitted) (citing *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991)). Under New York law, prejudgment interest accrues at a rate of nine percent per annum and is calculated "from the earliest ascertainable date the cause of action existed . . . to the date the verdict was rendered or the report or decision was made." N.Y. C.P.L.R. § 5001(b)–(c); *id.* § 5004.

Although Plaintiffs do not propose a specific start date for the accrual of prejudgment interest in this case, Plaintiffs' complaint alleges that Defendant del la Maza breached the agreement on October 17, 2019, with damages accumulating from that point forward to the end of 2020, at least. (*See* Amend. Compl., ECF No. 24, ¶¶ 18–28.) Accordingly, because the Court finds that Plaintiffs have sufficiently proven damages for 2020, the Court recommends that prejudgment interest be calculated from May 25, 2020, the approximate mid-point date between del la Maza's breach on October

17, 2019 and December 31, 2020, to the date of entry of final judgment. *See Plaza Motors of Brooklyn, Inc. v. Rivera*, No. 19-CV-6336 (LDH) (RLM), 2020 WL 9814102, at *12 (E.D.N.Y. Sept. 17, 2020) (calculating prejudgment interest on accumulating damages from the approximate midpoint date). Prejudgment interest should thus be calculated from May 25, 2020 to the date the Court enters final judgment, at the rate of nine percent per annum on the recommended damages award of $232,325.99.

### D. Post-Judgment Interest

Post-judgment interest is mandatory and governed by federal statute. *See* 28 U.S.C. § 1961(a); *Plaza Motors of Brooklyn, Inc.*, 2020 WL 9814102, at *12. Therefore, the Court respectfully recommends that Plaintiff Jacobs be awarded post-judgment interest using the federal rate set forth in 28 U.S.C. § 1961(a), and calculated from the date the Clerk of the Court enters judgment in this action until the date of payment.

### CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Plaintiffs' motion for default judgment (ECF No. 39) be granted in part and denied in part. More specifically, this Court recommends:

(1) declaring that Plaintiff Jacobs and Defendant del la Maza entered into a valid contract whereby they were to split the profits earned from the Website, with each party to receive 50%;

(2) granting Plaintiffs' motion for default judgment, and finding Defendant del la Maza liable for Plaintiff Jacob's claim of breach of contract;

(3) dismissing Plaintiffs' claims based on a breach of fiduciary duty and tortious interference as duplicative with the breach of contract claim;

(4) denying Plaintiffs' request for equitable relief based on theories of constructive trust and unjust enrichment, and dismissing Plaintiffs' request for a corporate accounting of Defendant DLM Ventures;

(5) awarding Plaintiff Jacobs $232,325.99 in damages;

(6) denying Plaintiffs' request for attorneys' fees and other costs, but awarding Plaintiff Jacobs the $400 filing fee reflected on the docket;

(7) awarding Plaintiff Jacobs prejudgment interest at nine percent per annum pursuant to N.Y. C.P.L.R. §§ 5001(b)–(c) and 5004, to be calculated on the damages award of $232,325.99 from May 25, 2020, to the date of the entry of final judgment; and

(8) awarding Plaintiff Jacobs post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), to be calculated from the date judgment is entered until the date of payment.

\*   \*   \*   \*   \*

This report and recommendation will be filed electronically and a copy sent by mail to all Defendants. As a courtesy, the Court also respectfully directs Plaintiffs to provide a copy of this report and recommendation to Defendants forthwith and to file proof of same by **August 22, 2023.** Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Allyne R. Ross at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g.,*

*Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

    **SO ORDERED.**

Dated:  Brooklyn, New York
       August 18, 2023

                      *Taryn A. Merkl*
                      TARYN A. MERKL
                      UNITED STATES MAGISTRATE JUDGE